# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. 25-CR-4021-LTS-KEM |
| vs. | **REPORT AND RECOMMENDATION** |
| ANDREW JOHN GROSS, | |
| Defendant. | |

Defendant Andrew Gross challenges the particularity of a search warrant for his cell phone and smart watch. Docs. 34, 50. The Government resists, arguing that the good-faith exception applies and that the motion is "moot." Doc. 44. I agree with Defendant that the Government's "mootness" argument is really an argument that the independent source doctrine applies: the Government argues that evidence from the cell phone should not be suppressed, because once Defendant filed the motion to suppress, law enforcement obtained a second search warrant for the cell phone.

I held a hearing on the motion to suppress on June 6, 2025. Doc. 54. The following witnesses testified:

- Sioux City Police Department Detective Nathan Niehus;
- South Sioux City Police Department Officer Joaquin Orduno; and
- Federal Defender's Office Investigator and Litigation Support Specialist Joseph Manser.

I also admitted the following exhibits into evidence:

- Exhibits A, B, and C – first search warrant materials (Docs. 34-2, 34-3, 34-4);
- Exhibit D – second search warrant materials (filed under seal, Doc. 51-1);

- Exhibit E – search warrant materials in the *Williams* Eighth Circuit case (Doc. 50-1);
- Exhibit F – Detective Niehus and Detective Justus Knudsen police report (filed under seal, Doc. 51-2).

I recommend **GRANTING** the motion to suppress (Doc. 34).

## I. BACKGROUND[1]

On April 17, 2024, an "Officer Stubbe" with the Sioux City Police Department spoke with the parents of a minor victim. The parents said that they monitor their son's cell phone usage, and they had seen that he looked up sex offenders in the area, specifically, Gross. When confronted, their son said he had entered Gross's house during a diabetic episode and thereafter began messaging him on Discord. Officer Stubbe took pictures of the Discord messages between Gross and the minor victim that were sent between April 9 and April 15, 2024, which included the minor sending Gross an explicit picture of himself.

Detective Niehus interviewed Gross on May 14, 2024. Gross initially consented to the search of his phone but later changed his mind. When Detective Niehus informed Gross he was going to seize his phone anyway, Gross started to delete items from the photo gallery on his phone. Detective Niehus seized the unlocked phone from Gross and placed it in airplane mode. When Detective Niehus left the interview room, Gross began doing something on his smart watch, so officers seized that too. Detective Niehus applied for a search warrant, requesting to search Defendant's "Blue Google smartphone with clear case" and "Silver Google smartwatch," checking a box indicating these items contained "property relevant and material as evidence in a criminal prosecution." Ex. A. The application incorporated by reference Detective Niehus's affidavit, which set out

---

[1] The facts in this section are taken from the affidavit in support of the first warrant and the testimony at the suppression hearing unless otherwise noted.

2

Case 5:25-cr-04021-LTS-KEM    Document 57    Filed 07/03/25    Page 2 of 19

law enforcement's findings regarding Gross's contact with the minor victim. *Id.* The affidavit concluded with a request to search the smartphone and smart watch "for digital evidence to include but not limited to conversations, photos, videos, location, and child pornography to include but not limited to [the minor victim]." *Id.* A state magistrate judge issued the search warrant, authorizing the "immediate search of the contents of" the smartphone and watch. Ex. B. The warrant noted the Sioux City Police Department had possession of the smartphone and watch, which had been seized from Gross, and which were "being held as evidence for a violation of the laws of this state." *Id.* The warrant concluded that if "the property or any portion of the property is found," it should be brought to the magistrate judge. *Id.*

Law enforcement wanted to search the phone as soon as possible, because of concerns that the device would become locked and inaccessible. Detective Niehus provided the phone and warrant to Detective Knudsen to perform the search, as he is good with technology. Detective Niehus testified that he gave a copy of the search warrant to Detective Knudsen and described the Discord messages and activity to search for. He also testified that the search warrant authorized the search of the entire device, as child pornography could be hidden in folders made to look like something else (like a calculator app), but it is unclear whether he relayed this information to Detective Knudsen. Detective Knudsen in turn gave the phone to Investigator Orduno with the South Sioux City Police Department, as he had access to a premium version of the Cellebrite software, used to extract data from a cell phone.

Investigator Orduno testified that he extracted 70 gigabytes of data from the phone in under three hours using the Cellebrite software. He testified that at the time of extraction, the phone remained unlocked, which made extraction easier. Law enforcement did not have the PIN code to unlock the phone. Investigator Orduno testified that Cellebrite cannot always bypass the passcode and extract data from a locked phone. Whether Cellebrite can break into the phone depends on the phone's software—Android and Apple try to protect phones from Cellebrite extractions through software updates,

3

and sometimes, Cellebrite cannot access data on the phone without using proprietary information (preventing Cellebrite from extracting data). Investigator Orduno testified that Cellebrite was more likely to be able to extract data from a locked cell phone if the phone used an older version of Apple or Android's software.

Investigator Orduno extracted all data from the phone and provided it to Detective Knudsen on a thumb drive. Investigator Orduno performs these types of searches for many agencies and testified that he does not have time to review the search warrant authorizing the search nor the data extracted; he simply extracts all possible data and provides it to the requesting agency. Detective Knudsen then used Cellebrite software to organize and review the extracted data. Detective Knudsen's report indicates that because the investigation involved child pornography, he also used CaseScan software, which can identity pornography, nudity, and child pornography in cell phone extractions. CaseScan identified hundreds of images of potential child pornography from Google Photos, Twitter, and the deleted photos section of the phone. Ex. F. Detective Knudsen's police report reflects that he learned when the Discord application had been downloaded on the phone, found emails discussing Gross's Discord account, looked at Gross's internet search history (reflecting searches for child pornography), and concluded Google Photos contained the bulk of the child pornography on the phone. *Id.* Detective Knudsen showed Detective Niehus the results of the search, and Detective Niehus filed the search warrant return listing the items seized on May 14, 2024, and labeled the material merely as, "digital media." Ex. C. Detective Niehus did not believe that the smart watch was searched, as the Sioux City Police Department lacked the capabilities to extract data from the watch.

The grand jury indicted Gross in March 2025 on charges of receipt and possession of child pornography. Doc. 3. On April 22, 2025, Defendant moved to suppress, arguing that the search warrant violated the Fourth Amendment's particularity requirements. Doc. 34. The Government obtained an extension to respond (Doc. 38) and alerted law enforcement to the particularity problem. On May 9, 2025, Detective

Niehus obtained a federal search warrant for the cell phone (but not the watch). Ex. D. The Government filed its resistance a few days later, arguing that the unconstitutionality of any search under the first warrant was "moot," since the Government did not intend to offer evidence from the first search and warrant; instead, the Government would offer evidence of the phone's contents from a May 2025 search of the phone pursuant to the second warrant. Doc. 44. In reply, Defendant asserted the Government's argument should be analyzed under the independent source doctrine, rather than mootness. Doc. 50.

At the suppression hearing, Detective Niehus testified that he applied for and executed the second search warrant (Ex. D), but the Government did not offer any other evidence on the second search (i.e., how was the data extracted? were the same child pornography images found?).[2] During oral argument, the Government argued that the good-faith exception saved the search in this case. When the court noted the brief mentioned "mootness" and asked the Government to explain its argument aside from good faith, the Government said there was nothing "beyond the good faith." In response, Defendant (fairly) characterized the Government as abandoning the mootness argument. The court asked the Government for clarification. The Government said that it was not abandoning the argument based on the second warrant and that the second warrant was an independent source. The Government could not cite any caselaw to support its argument.

## II. DISCUSSION

At the hearing, the Government conceded that the first search warrant did not meet particularity requirements. The Government argued that the search under the first

---

[2] The Government did not include the return of service from this warrant as an exhibit to its resistance. The court notes that the warrant return (filed in the sealed case listed on sealed Exhibit D) lists the property seized as "Digital Data from extraction of Google Pixel Pro IMEI [specific number]."

warrant should still be upheld under the good-faith exception. The Government also went back-and-forth on whether it relied on the independent source doctrine but ultimately stated it refused to abandon its argument based on the second search warrant.

### A. Particularity

The Fourth Amendment requires that warrants "particularly describ[e] the place to be searched, and the persons or things to be seized."[3] That the warrant "*application* adequately described the 'things to be seized' does not save the *warrant* from . . . facial invalidity"; the Fourth Amendment "requires particularity in the warrant, not in the supporting documents."[4] A court may consider the supporting application or affidavit as part of the warrant "if the warrant uses appropriate words of incorporation[] and . . . the supporting document accompanies the warrant."[5] Here, the warrant does not use language incorporating the warrant application or affidavit. The Government concedes that the warrant does not meet the Fourth Amendment's particularity requirements in describing the things to be seized; the face of the warrant does "not describe the items to be seized *at all*," and it does not mention the application or affidavit.[6]

Nevertheless, the Government argues that suppression is not required pursuant to the good-faith exception. Under the *Leon*[7] good-faith exception, the exclusionary rule does not apply when the officer acted with objective good faith in relying on the warrant, even when the warrant is later invalidated.[8] An officer does not act in objective good

---

[3] **U.S. Const. amend. IV**.

[4] *Groh v. Ramirez*, 540 U.S. 551, 557 (2004).

[5] *United States v. Campbell*, 6 F.4th 764, 770 (8th Cir. 2014) (as amended 2021).

[6] *Groh*, 540 U.S. at 558.

[7] *United States v. Leon*, 468 U.S. 897 (1984).

[8] *United States v. Williams*, 131 F.4th 652, 658 (8th Cir. 2025).

faith (and *Leon* does not apply) "when the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid."[9]

In *Groh v. Ramirez*, the warrant application "adequately described the 'things to be seized'" (various firearms and explosive devices), but the warrant itself "provided no description of the type of evidence sought."[10] A team of law enforcement officers executed the warrant, led by the warrant affiant.[11] The Supreme Court held that the warrant "was plainly invalid":

> This warrant did not simply omit a few items from a list of many to be seized, or misdescribe a few of several items. Nor did it make what fairly could be characterized as a mere technical mistake or typographical error. Rather, in the space set aside for a description of the items to be seized, the warrant stated that the items consisted of a "single dwelling residence blue in color." In other words, the warrant did not describe the items to be seized *at all*. In this respect the warrant was so obviously deficient that we must regard the search as "warrantless" within the meaning of our case law.[12]

The Court denied qualified immunity to the officers who performed the unconstitutional search, finding that the warrant was "so facially deficient—*i.e.*, in failing to particularize the place to be searched or the things to be seized—that the executing officers [could not] reasonably presume it to be valid."[13]

Here, as in *Groh*, the face of the warrant did not describe or limit the items to be seized in any way. *Groh* could perhaps be distinguished as involving the search of a house, while here, law enforcement searched the contents of a smartphone. But it has been clear since 2014 that police must generally obtain a warrant before searching the

---

[9] *Id.* (quoting *United States v. Cannon*, 703 F.3d 407, 412 (8th Cir. 2013)).

[10] *Groh*, 540 U.S. at 554, 557.

[11] *Id.* at 554-55.

[12] *Id.* at 557-58 (cleaned up).

[13] *Id.* at 565.

data on a cell phone.[14]

A warrant to search a cell phone "need not be more specific than knowledge allows."[15] Cell phone warrants have been upheld as sufficiently particular when the evidence could be stored anywhere on a suspect's phone, and "the warrant cabin[ed] the things being looked for by stating what crime is under investigation."[16] Relatedly, Defendant cites cases in which courts have held "[f]ailure to limit broad descriptive terms by relevant dates, when such dates are available to the police, will render a warrant overbroad."[17] Here, the face of the warrant contained *no* limitation on items to be

---

[14] ***Riley v. California***, 573 U.S. 373, 403 (2014).

[15] ***United States v. Ivey***, 91 F.4th 915, 918 (8th Cir. 2024) (quoting ***United States v. Bishop***, 910 F.3d 335, 337-38 (7th Cir. 2018)).

[16] ***Bishop***, 910 F.3d at 337-38; *see also* ***Ivey***, 91 F.4th at 917-18 (upholding cell phone warrant as sufficiently particular when "[e]vidence of the offense could have been found anywhere in the phone," and warrant "specified the phone to be searched and identified the information to be seized"—"evidence related to firearms, ammunition, and possession and ownership of the seized firearm"); ***In re 650 Fifth Ave. & Related Props.***, 934 F.3d 147, 163 (2d Cir. 2019) (holding that warrant to search computers and other records at a particular address violated particularity requirements when it did not "include a reference to the Claimants' alleged crimes or a temporal scope for the items to be seized"); ***United States v. Castro***, 881 F.3d 961, 965 (6th Cir. 2018) ("A warrant that empowers police to search for something satisfies the particularity requirement if its text constrains the search to evidence of a specific crime."); ***United States v. Russian***, 848 F.3d 1239, 1245 (10th Cir. 2017) (holding that a warrant to search a cell phone is overbroad when there is "no limiting principle" and it permits the search of all data; but that "warrants may pass the particularity test if they limit their scope either 'to evidence of specific federal crimes or to specific types of material'" (quoting ***United States v. Christie***, 717 F.3d 1156, 1164-65 (10th Cir. 2013))); *cf.* ***United States v. Saddler***, 19 F.4th 1035, 1040 (8th Cir. 2021) (holding that warrant's authorization to search house "for 'any other item related to aggravated assault' was carelessly overbroad, but if the clause had been limited to the aggravated assaults described in detail in [the officer's] affidavit . . . it would likely have been valid"); ***United States v. Burkhow***, No. 19-CR-59-CJW-MAR, 2020 WL 589536, at *9-10 (N.D. Iowa Feb. 6, 2020) (holding that a warrant to search a defendant's social media "is not overbroad if it particularly describes the information to be disclosed and the offense being investigated," and temporal limitations are included if feasible).

[17] ***United States v. Winn***, 79 F. Supp. 3d 904, 921 (S.D. Ill. 2015) (quoting ***United States v. Lazar***, 604 F.3d 230, 238 (6th Cir. 2010)) (holding that warrant authorizing seizure of all evidence related to the offense of public indecency was overbroad and "should have specified

seized—it did not limit what police were searching for to evidence of child enticement or pornography, to a particular timeframe, or to certain categories of data. Instead, it authorized the search of the contents of the phone and failed to describe the evidence to be seized at all (akin to *Groh*).

The Government relies on *United States v. Williams*, in which the Eighth Circuit found the good-faith exception applied to a cell phone warrant the district court found overbroad.[18] In that case, the face of the warrant authorized the seizure of all information contained on the phone (including specified categories) for a "three-week time frame."[19] Despite the temporal limitation, the district court held the warrant "'insufficiently particular and unconstitutionally overboard' because the files to be searched were not limited to information related to felony gun and drug possession."[20] In applying the good-faith exception, the Eighth Circuit noted the investigator who requested the warrant also

---

the relevant time frame," as "[t]he alleged criminal activity took place on one day only . . . and the police were looking for photos or videos taken that same day"); *see also* **United States v. Holcomb**, 132 F.4th 1118, 1127-29 (9th Cir. 2025) (when officers had probable cause that defendant had sexually assaulted his girlfriend on a particular date and that his computer contained video evidence of the encounter, search warrant that authorized seizure of evidence from any time period on the computer to show defendant's "dominion and control" of the computer violated particularity requirements); **United States v. Rondeau**, No. 4:23-CR-40004, 2024 WL 4765007, at *5-6 (D.S.D. Nov. 13, 2024) (holding that warrant authorizing search of entire iCloud account going back to 2011 violated particularity requirements and should have included a temporal limitation when law enforcement had probable cause to search for evidence of defendant's contact with a minor victim that first began on June 13, 2022). Each of these cases declined to apply the good-faith exception. *But see Rondeau*, 2024 WL 4980864, at *10-11 (July 26, 2024) (magistrate judge who issued underlying report and recommendation in *Rondeau* "fe[lt] constrained to apply *Leon* good faith" as "the data requested by [the] warrant was [not] any broader tha[n] what was requested" in two District of Minnesota cases upholding a warrant against a particularity challenge).

[18] *United States v. Williams*, 131 F.4th 652, 658-59 (8th Cir. 2025).

[19] *Id.* at 656, 658; *see also* Def. Ex. E (warrant materials for the *Williams* case).

[20] *Id.* at 658.

performed the search.[21] Because the affidavit "included more particularized language about the scope of the requested search," the Eighth Circuit held it was "reasonable to believe that [the investigator] conducted a more circumscribed search than the language of the warrant literally authorized."[22] The Eighth Circuit noted the officer did not take "advantage of the lack of particularity" and "simply used standard department language" in drafting the warrant "that had been approved on many previous occasions."[23] *Williams* is inapplicable for several reasons. First, unlike *Williams*, the affiant here (Detective Niehus) did not perform the search—Detective Knudsen did.[24] Although Detective Niehus testified that he described the Discord messages to search for, there is no evidence Detective Knudsen limited the search to a particular time period or to certain categories of data; indeed, Detective Niehus instructed Detective Knudsen to search the entire phone.[25] In addition, the warrant in *Williams* was not as facially deficient as the warrant here—it described categories of data to search and contained a temporal limitation.

Here, as in *Groh*, the warrant "did not list *any* items to be seized."[26] Although

---

[21] *Id.* at 659.

[22] *Id.*

[23] *Id.*

[24] *United States v. Henderson*, relied upon by the Government, can be distinguished for the same reason. 416 F.3d 686, 695 (8th Cir. 2005). In addition, in *Henderson*, the court affirmed the district court's finding that the officer "had a reasonable belief that [the] warrant was limited to the seizure of computer files and drives related to [defendant's] business activities, finances and disability" (even though it appeared to broadly authorize the seizure of all records on the computer); the court did not discuss the basis for this finding, and the underlying district court opinion is sealed. *Id.*

[25] The Government argues that Detective Knudsen was "briefed on what [he was] authorized to search for," as in *Saddler*, but that case is distinguishable for several reasons noted below. 19 F.4th at 1041.

[26] *Saddler*, 19 F.4th at 1041 (distinguishing *Groh* because the warrant "broadly described categories of items to be seized," making it more reasonable for officers to rely on it).

the affidavit contained particulars, so did the affidavit in *Groh*. The warrant did not mention the affidavit at all.[27] Law enforcement were working under a time crunch in the sense that they wanted to search the phone before it became "locked," but they also waited to obtain the warrant for almost a month from the time they received the information establishing probable cause.[28] To apply the good-faith exception here would require a disingenuous distinguishing of *Groh*—the warrant was so facially deficient that no reasonable officer could rely on it.[29]

I recommend finding that the good-faith exception does not apply.

### B. Independent Source Doctrine

After Defendant filed the motion to suppress, the Government obtained a federal search warrant for the smartphone and "executed" it. The Government argues this subsequent search "moots" any particularity problem with the first warrant. As

---

[27] *Cf. id.* at 1040-41 (finding relevant for purposes of good-faith exception that the warrant "referenced [the] affidavit in its finding of probable cause[] and [that] the issuing magistrate signed the affidavit," even though the warrant did not incorporate the affidavit by reference and the affidavit did not "accompan[y] the officers in executing the warrant"); *United States v. Szczerba*, 897 F.3d 929, 938-39 (8th Cir. 2018) (applying good-faith exception to warrant that completely failed to identify items to be seized when affidavit contained these particulars, and officer could reasonably believe warrant incorporated affidavit (even though it did not) because warrant mentioned affidavit, issuing judge signed the affidavit, and both the warrant and the affidavit went to the scene of the search).

[28] *See In re 650 Fifth Ave.*, 934 F.3d at 163 (in declining to apply good-faith exception, finding relevant that the officer "prepared the affidavit . . . the day before the search" and that the government "did *not* rush through" the normal warrant application process, which included review by the government attorney).

[29] *See United States v. Santiago*, 135 F.4th 1235, 1239-40 (10th Cir. 2025) (holding that good-faith exception did not apply to cell phone warrant authorizing search of all information "within [the] phone that may be deemed evidence that a crime has been or is about to be committed," as so facially deficient no reasonable officer could rely on it); *see also In re 650 Fifth Ave.*, 934 F.3d at 161, 163 (holding that good-faith exception did not apply to "glaringly deficient warrant" to search computers without identifying categories of information to seize, the alleged crime, or any temporal scope).

Defendant pointed out (and the Government failed to recognize, even at the hearing), courts have analyzed this type of argument under the independent source doctrine.[30]

The independent source doctrine allows evidence obtained pursuant to an illegal search to be admissible if it was also subsequently obtained through an independent, lawful manner.[31] "A warrant obtained after an illegal search is not an independent source if either of the following are true: 'if the agents' decision to seek the warrant was prompted by what they had seen during the initial entry,' and 'if information obtained during that entry was presented to the Magistrate and affected his decision to issue the warrant.'"[32] The second prong of this test employs a *Franks*[33]-type analysis, asking whether the subsequent warrant was supported by probable cause without the information acquired during the unlawful search.[34] The goal of the independent source doctrine is to ensure that the government does not "profit from its illegal activity," but that it also is not "placed in a worse position than" if the illegal search had not occurred.[35]

In *Swope*, the Eighth Circuit analyzed the first prong in the context of a warrant obtained after an illegal warrantless search. The court noted that *Murray*, the seminal

---

[30] *United States v. Beck*, No. 21-13582, 2023 WL 5016614, at *1 (11th Cir. Aug. 7, 2023) (when the government argued particularity problem with the first warrant for defendant's emails was "moot because it did not use any of the information collected from that search," since it obtained a second warrant for the same emails, court analyzed whether the independent source doctrine applied); *United States v. Norton*, 720 F. Supp. 3d 1110, 1136-37 (D.N.M. 2024) (when the government argued any illegality with the first warrant for defendant's DNA was mooted by subsequent warrant for "another buccal swab of [d]efendant's DNA," holding that "the legal theory [the government] relies on . . . is the independent source doctrine"), *aff'd,* 130 F.4th 824 (10th Cir. 2025) (not addressing the independent source doctrine).

[31] *United States v. Swope*, 542 F.3d 609, 613 (8th Cir. 2008).

[32] *Id.* (quoting *Murray v. United States*, 487 U.S. 533, 542 (1988)).

[33] *Franks v. Delaware*, 438 U.S. 154 (1978).

[34] *Swope*, 542 F.3d at 614.

[35] *Murray*, 487 U.S. at 542.

Supreme Court case setting forth this test, "uses two similar yet seemingly incompatible formulations of the first prong: whether 'the agents' decision to seek the warrant was prompted by what they had seen during the initial [warrantless illegal] entry,' and, alternately, whether 'the agents would have sought a warrant if they had not earlier entered the warehouse.'"[36] The Eighth Circuit rejected "[a] superficial reading of the 'prompted' test [that] would require suppression if the officers' decision to seek the warrant was in fact prompted by what they saw during the prior illegal entry, regardless of whether they would have applied for the warrant had they not made that entry."[37] The court reasoned such a reading would conflict with the purpose of the independent source doctrine.[38] The court instead adopted "an inquiry into the substantive effect of the illegal entry"—"the proper test under *Murray*'s first prong is whether the police would have applied for the warrant had they not made the prior illegal observations."[39]

In *Hansel*, the Eighth Circuit recognized that the independent source doctrine could apply to a prior unconstitutional search pursuant to a warrant.[40] In that case, the court rejected a *Franks* challenge to a state search warrant authorizing the search of a computer.[41] The court additionally held that even if the state search warrant were invalid under *Franks*, the independent source doctrine applied.[42] The court reasoned that "even if the . . . state search warrant[] had not been issued, the government would have sought the federal search warrant for [defendant's] computer equipment," which "did not depend

---

[36] *Swope*, 542 F.3d at 615 (quoting *Murray*, 487 U.S. at 542-43).

[37] *Id.*

[38] *Id.*

[39] *Id.*

[40] *United States v. Hansel*, 524 F.3d 841, 846 (8th Cir. 2008).

[41] *Id.* at 845-46.

[42] *Id.* at 846.

on any information obtained pursuant to the [state] warrant[]."[43] The court did not discuss the reason for seeking the federal warrant, but law enforcement did not appear to be motivated by deficiencies in the state warrant.[44]

The Eighth Circuit has not had the opportunity to address the "motivational" prong under circumstances like here. In *United States v. Brooks*, the defendant argued "that the eight-month delay in seeking the warrant" after the warrantless search of his phone "suggests that the desire to cure the illegality of the initial search prompted the warrant request."[45] The court disagreed, noting that law enforcement obtained the warrant after receiving new information about an accomplice, prompting a desire to search the phone's call logs and text messages, which had not previously been searched.[46]

Here, law enforcement were motivated to obtain the second warrant by a "desire to cure the illegality" of the first. At the hearing, Detective Niehus candidly admitted this motivation. Thus, obtaining the second warrant does appear to have been motivated in part by what the first search revealed (if nothing illegal had been found, there would be no need to fix the problem). On the other hand, if the first search had not occurred—if the magistrate judge or law enforcement had realized the warrant lacked particularity prior to the search—then law enforcement would have obtained a corrected warrant. Indeed, they ultimately did so. But they would not necessarily have obtained this precise second warrant—from a federal judge almost a year later. Instead, it seems more likely that they would have simply added a few lines to the original state court warrant to satisfy

---

[43] *Id.*

[44] *See also* **United States v. Hansel**, No. 06-CR-102, 2006 WL 3004000, at *4 (N.D. Iowa Oct. 20, 2006) (underlying district court decision) (noting that after executing the state search warrants, which revealed child pornography, the investigator "contacted the United States Attorney's Office" and then "applied for a federal search warrant").

[45] **United States v. Brooks**, 715 F.3d 1069, 1076 (8th Cir. 2013).

[46] *Id.*

particularity. The Eighth Circuit's discussion of the motivational prong in *Swope* suggests that the true test is whether law enforcement would have applied for the warrant absent the unconstitutional search. Here, it does not seem likely that they would have applied for a federal search warrant in May 2025 absent the unconstitutional search in May 2024. But they would have obtained a warrant, just earlier in time (and perhaps from a state judge). How does that square with the *Swope* test?

Defendant relies on *United States v. Norton*, a case from the District of New Mexico. The defendant challenged the search warrant for his DNA under *Franks*, arguing that the probable cause affidavit contained false statements.[47] The government requested an extension to respond to the motion to suppress, during which time law enforcement sought and obtained a second search warrant to fulfill the same objective as the first warrant.[48] The court reasoned that law enforcement applied for the second warrant only after the defendant filed the motion to suppress and after the defendant's DNA matched the firearm at issue.[49] The court concluded that the second warrant was "inextricably linked" to the first warrant because the government knew they would again find the same evidence produced in the first inadmissible search, motivated by "the potential constitutional infirmity of the first warrant."[50]

*Norton* can be distinguished based on the illegality at issue there (false statements in the affidavit) versus here (particularity). It is hard to envision what would have happened in *Norton* if the first search warrant had been denied (and the first search not occurred). How would the magistrate judge have known that the warrant contained false statements? In the hypothetical world where the first warrant was denied, law

---

[47] *Norton*, 720 F. Supp. 3d at 1118.

[48] *Id.* at 1120.

[49] *Id.* at 1138.

[50] *Id.*

enforcement would not have been told of the *Franks* issue and been able to easily fix the problem. In addition, that officers acted with a "reckless disregard for the truth" in *Norton* (as opposed to mere negligence) supports application of the exclusionary rule. Here, on the other hand, both officers *and* the issuing state magistrate judge made a mistake. If the magistrate judge had denied the first warrant on particularity grounds, the officers could have easily fixed the problem and obtained a corrected warrant—as they ultimately did.

In *United States v. Johnson*, the Second Circuit held that the independent source doctrine applied when law enforcement obtained a warrant to search audio tapes only after the district court suggested that the original warrantless search was unconstitutional.[51] The court found it "key" that the warrantless search "did not result in the government obtaining evidence it would not otherwise have obtained."[52] The court held "the government would have acquired the evidence on the tapes without the agents' mistaken prior review of the tapes, since the warrant application was prompted not by the prior review but by the obvious relevance of the tapes and the district court's indication that a warrant was necessary."[53] The court held suppression was not required because "the government d[id] not gain an advantage from its initial violation."[54]

Other district courts have similarly reasoned it does not matter for purposes of the motivational prong that "officers ever intended to obtain a warrant" (or second warrant) and that they obtained the warrant only after the court, an opposing party, or another officer pointed out the potential illegality of the initial search.[55] Instead, these courts

---

[51] 994 F.2d 980, 987 (2d Cir. 1993).

[52] *Id.*

[53] *Id.*

[54] *Id.*

[55] *United States v. Hanhardt*, 155 F. Supp. 2d 840, 844, 849, 852 (N.D. Ill. 2001) (applying independent source doctrine when law enforcement initially conducted warrantless search of

briefcase based on third-party consent but obtained a warrant and re-performed the search after the Seventh Circuit held the initial search unconstitutional); *see United States v. Vernelus*, No. 23-20033-CR, 2024 WL 4688857, at *2 (S.D. Fla. Nov. 6, 2024) (applying independent source doctrine based on federal warrant for smart phone obtained in response to suppression motion arguing the original state warrant was overbroad, because federal agent testified that fraud investigation had already begun at time of original state search and that he would have obtained a federal warrant if not for the state search); *United States v. Haack*, No. 18-CR-928 MV, 2024 WL 3045278, at *2, *4 (D.N.M. June 18, 2024) (when law enforcement obtained warrant for first floor of residence without realizing it contained a second floor, mistakenly believed they could search the second floor under plain-view doctrine, and later discovered child pornography; holding that independent source doctrine applied to search of second floor conducted pursuant to warrant obtained after consulting with an officer specialized in child pornography, who informed them of the illegality of the initial search); *United States v. Lewis*, No. 21-cr-00021, 2024 WL 2980956, at *2-3 (E.D. Ky. June 13, 2024) (after the Sixth Circuit held the good-faith exception did not apply to the search of a cell phone conducted pursuant to a warrant supported by a bare-bones affidavit, law enforcement obtained a second warrant and re-performed the search, and the court applied the independent source doctrine); *United States v. Gatlin*, No. 14-cr-327, 2015 WL 757346, at *9-10 (D. Minn. Feb. 23, 2015) (report and recommendation) (finding that independent source doctrine applied when officer on the scene of search warrant execution noticed it violated particularity requirements, prompting law enforcement to obtain a new warrant correcting the problem while the search continued) (defendant pleaded guilty before the district court ruled on defendant's objections to the report and recommendation, Doc. 68 (Sept. 24, 2015)); *State v. Camey*, 217 A.3d 106, 110, 123 (N.J. 2019) (holding that independent source doctrine could apply to second DNA swab after court found consent for first swab invalid, as long as independent probable cause for second search existed, and the initial search "was not the result of flagrant police misconduct"); *People v. George*, 488 P.3d 1159, 1167 (Colo. 2017) ("While the suppression order [invalidating the consent search] prompted the investigator to seek a warrant, the objective of avoiding the consequences of that order does not equate to an improper motive arising from the fruits of the unlawful search."); *State v. Dasen*, 155 P.3d 1282, 1286 (Mont. 2007) ("[W]hile the first search [pursuant to an overbroad warrant] was a factor in obtaining the second search warrant, in that the invalidity of the first search necessitated a second warrant, the State nevertheless possessed sufficient independent information to 'purge the taint' of the first search."); *cf. Beck*, 2023 WL 5016614, at *4-5 (holding that independent source doctrine applied when law enforcement were motivated to obtain second warrant by "the filing of the [m]otion to [s]uppress . . . alert[ing]" them to the particularity error; law enforcement could not have been motivated by the information obtained from the first search, as they had not yet viewed "the content pulled from the first search"); *but see Vernelus*, 2024 WL 4973326, at *14 (Mar. 4, 2024) (report and recommendation rejected) (would have held independent source doctrine did not apply when law enforcement admitted second warrant "was prompted by [d]efense counsel's challenge to the legality of the search" under the first warrant "and thus the admissibility of the evidence seized therein").

17

have reasoned that the purpose of the motivational prong is to "root out . . . 'confirmatory search[es,]' . . . . when officers conduct a search to get assurance that evidence is present before taking the time and effort to obtain a warrant."[56] Thus, they have held when law enforcement intended to conduct the search legally but made a mistake, by re-performing the search in response to learning of its illegality, they are conforming with their original intent, rather than motivated by what they discovered during the search. Courts have also reasoned that if law enforcement returned the evidence, nothing would prevent them from obtaining a new search warrant based on independent evidence.[57]

The majority of cases support that the Government is not prohibited from obtaining a second search warrant for purposes of the independent source doctrine in response to a motion to suppress. But the Government must still meet its burden of establishing the independence of the second search by a preponderance of the evidence.[58] Here, the Government has not done so. The court has no information on the second search, other than that the second search warrant was "executed." Were law enforcement able to extract the data from the smartphone for a second time, or did they simply re-search the prior mirror image obtained using the first warrant? If they performed the extraction anew, how did they unlock the phone? Testimony supports that extracting data from the smartphone might have been impossible once the phone locked—and surely, the phone was locked after being in an evidence locker for a year. The court has no information on if or how law enforcement performed the second search and whether they used information obtained from the first search. Under the circumstances, the Government has not met its burden of proof.[59]

---

[56] *Hanhardt*, 155 F. Supp. 2d at 847-48.

[57] *Lewis*, 2024 WL 2980956, at *3.

[58] *See Nix v. Williams*, 467 U.S. 431, 444 & n.5 (1984) (preponderance standard).

[59] *See People v. Thompson*, 500 P.3d 1075, 1080 (Colo. 2021) (holding that government did not meet burden of proving independent source doctrine applied when it

I recommend holding that the independent source doctrine does not apply.

### III. CONCLUSION

I recommend **granting** Gross's motion to suppress (Doc. 34).

Objections to this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1), Federal Rule of Criminal Procedure 59(b), and Local Criminal Rule 59, must be filed within fourteen days of the service of a copy of this Report and Recommendation; any response to the objections must be filed within seven days after service of the objections. A party asserting such objections must arrange promptly for the transcription of all portions of the record that the district court judge will need to rule on the objections.[60] Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections.[61] Failure to object to the Report and Recommendation waives the right to de novo review by the district court of any portion of the Report and Recommendation, as well as the right to appeal from the findings of fact contained therein.[62]

**DATED** July 3, 2025.

Kelly K. E. Mahoney
Chief Magistrate Judge
Northern District of Iowa

---

"stated, in a conclusory way, that" any defect in the first warrant could be cured by a second warrant, "as long as it doesn't include any information from the prior search," and they offered evidence that they "procur[ed] a new warrant and 'obtain[ed]' the evidence a second time . . . , without showing that the later seizure was genuinely independent of the earlier, tainted one"); *see, e.g.*, **People v. d'Estree**, 562 P.3d 77, 88 (Colo. App. 2024) (holding that independent source doctrine did not apply when "police used illegally obtained information from the first warrant—the PIN code—in *executing* the second warrant").

[60] **LCrR 59**.

[61] *See* **Fed. R. Crim. P. 59**.

[62] *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).